IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. VENTURE, INC. d/b/a<br>U.S. OIL,<br><br>　　　Plaintiff,<br>　　　　　v.<br><br>W.C. MCQUAIDE, INC. and<br>MCQUAIDE PROPERTIES, LLC<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)　　Civil No. 3:22-cv-00075<br>)　　Judge Stephanie Haines<br>)<br>)<br>)<br>)<br>) |

**OPINION**

U.S. Venture, Inc. t/d/b/a U.S. Oil ("Venture") files this civil action (Complaint, ECF No. 1) against Defendants W.C. McQuaide, Inc. and McQuaide Properties, LLC (collectively "Defendants") for breach of contract, promissory estoppel/detrimental alliance, and seeking indemnification pursuant to a contract and pursuant to common law.  Presently, before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 23) Venture's Complaint asserting that McQuaide Properties, LLC is an improper defendant.[1]  Venture filed a Brief in Opposition (ECF No. 26), and Defendants filed a Reply (ECF No. 27).  The matter is ripe for disposition.

**I. Factual Background**

According to Venture's Complaint (ECF No. 1) Defendants entered into the U.S. Oil CNG Supply Agreement ("Agreement") to purchase compressed natural gas ("CNG") from Venture. ECF No. 1, ¶ 7; ECF No. 1-1.  The Agreement is "by and between U.S. Venture, Inc. doing business as U.S. Oil ("U.S. Oil") and the following party ("User"): W.C. McQuaide, Inc. (User – Legal Entity)".  ECF No. 1, ¶ 8; ECF No. 1-1, ¶ 2.  The Agreement is for a term of ten years

---

[1] Defendants seek only to dismiss defendant McQuaide Properties, LLC and not co-defendant W.C. McQuaide, Inc. The dismissal of one defendant in a multidefendant case does not necessitate the dismissal of the Complaint in its entirety.  The Court will review the Motion to Dismiss as to the dismissal of McQuaide Properties, LLC only.

commencing from the time User has taken delivery of at least 25 CNG-powered vehicles and begins regularly dispensing CNG from U.S. Oil's dispensing facility in Johnstown or other locations. ECF No. 1, ¶ 8; ECF No. 1-1, ¶ 2. Addendum A of the Agreement requires that User purchase at least 200,000 GGEs (gasoline gallon equivalent) of a compressed natural gas product per year for the duration of the ten-year contract. ECF No. 1, ¶ 11; ECF No. 1-1, p. 7. Addendum A was revised by the First Amendment to the U.S. Oil CNG Supply Agreement (ECF No. 1-2, p. 1) to extend the term of the Agreement to 12 years. ECF No. 1, ¶ 13. Revised Addendum A (ECF No. 1-2, p. 3) to the Agreement states:

> User's purchases will be reconciled on a calendar year basis with the first reconciliation to take place following the conclusion of the first calendar year after commencement of the Term of this Agreement. In the event the User fails to purchase 100% of the pro rata minimum yearly GGE requirements, then U.S. Oil may, at its option, assess a shortfall penalty one dollar and ten cents ($1.10) per GGE for the difference between the minimum GGE requirement of Product and the actual GGEs of Product purchased. User will be notified in writing of any shortfall and any penalty U.S. Oil intends to assess. User agrees that, upon such notice, U.S. Oil is authorized to draft the penalty amount from User's account via EFT.

ECF No. 1, ¶ 15; ECF No. 1-2, p. 3. Venture states that to date Defendants have incurred shortfalls of about 1,052,631 GGEs with the amount continuing to accrue each year and for the remaining years of the Agreement, including the extra years added with the First Amendment of the Revised Addendum A. ECF No. 1, ¶¶ 17, 20. To date Defendants have paid no amount owed to Venture in shortfall penalties. ECF No. 1, ¶ 21.

The Agreement contains an indemnity clause that states:

> To the fullest extent permitted by law, User shall indemnify, hold harmless, and defend U.S. Oil, its shareholders, directors, officers, agents, and employees from and against all claims, damages, losses, and expenses, including but not limited to reasonable attorneys' fees, arising out of or resulting from the conduct or operation of User's business, including any condition created through User's fueling and use of the Product sold to User by U.S. Oil, or any accident, injury, or damage whatsoever occurring at, by, or in connection with User's business and/or fueling and use of the Product, provided that any such claim, damage, loss, or expense (a)

is attributable to bodily injury, sickness, disease, or death, or injury to or destruction of tangible property, and (b) is caused in whole or in part by any act or omission of User or its agents, guests, or employees. However, in all cases, User's obligation to indemnify U.S. Oil shall extend only to the percentage of negligence of User in contributing to such claim, damage, loss, or expense. In turn, U.S. Oil has the obligation to indemnify User only to the percentage of negligence of U.S. Oil in contributing to such claim, damage, loss, and expense.

ECF No. 1-2, pp. 3-4, ¶ 5.

Additionally, Venture entered into a Special Guaranty Agreement with Ryder Truck Rental, Inc., d/b/a Ryder Transportation Services ("Ryder"), which guaranteed certain obligations of Defendants to Ryder associated with a Truck Lease and Service Agreement. ECF No. 1, ¶ 25. Venture and Ryder entered into a General Guaranty Agreement which superseded and replaced the Special Guaranty Agreement. ECF No. 1, ¶ 26 (Exhibit 5, ECF No. 1-5). The introduction to this contract states that "W.C. McQuaide, Inc. ('Customer') and Ryder are parties to a Truck Lease and Service Agreement dated July19, 2012 (the 'Master Service Agreement')". ECF No. 1-5, p. 1. Under the General Guaranty Agreement, Venture's maximum payment obligations were not to exceed One Million, One Hundred and Fifty Thousand Dollars ($1,150,000.00). ECF No. 1-5, p. 1, ¶ 2.B.[2]

According to two January 19, 2022, letters addressed to Venture from Ryder, W.C. McQuaide, Inc. failed to fulfill the terms of the Master Service Agreement with Ryder, thus triggering the General Guaranty Agreement between Venture and Ryder. ECF No. 1-6, p. 1. According to the letters, Venture owes $4,603.11 for costs and expenses incurred to collect the amounts due from W.C. McQuaide, Inc., along with the expenses associated with the obligation of W.C. McQuaide, Inc. to purchase the vehicles at a contractual cost of $2,014,980.21. ECF No.

---

[2] Venture's Complaint mistakenly states Venture's maximum payment obligation under the General Guaranty Agreement to be Four Hundred Thousand Dollars ($400,000.00). ECF No. 1, ¶ 27.

1-6. Venture asserts that any payments due to Ryder are attributable to Defendants' failure to pay its obligations to Ryder. ECF No. 1, ¶ 30.

Venture claims breach of contract and promissory estoppel/detrimental reliance and seeks payment for the shortfalls as specified in the Agreement. Venture also seeks indemnification from Defendants for the amounts due in the General Guaranty Agreement with Ryder.

## II. Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8(a)(2) is to give the defendant fair notice of what the claim is and the grounds upon which it rests.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the Court is not opining on whether the plaintiff will likely prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-236 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and view them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") (citation omitted).

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. Discussion

Defendants Motion to Dismiss (ECF No. 23) seeks to have McQuaide Properties, LLC dismissed as a defendant because they claim it was not a party to the agreements at issue.

5

Defendants state that the only substantive allegation against McQuaide Properties, LLC in the Complaint is "that based on information and belief W.C. McQuaide, Inc. and McQuaide Properties, LLC operated as a joint enterprise with each acting as the agent of the other," ECF No. 23, ¶ 23; ECF No. 1, ¶ 6, thus, inferring the contractual obligations of W.C. McQuaide, Inc. are also the obligations of McQuaide Properties, LLC. But Venture does not provide any proof of this assertion. Defendants move to dismiss the Complaint without prejudice allowing Venture to replead the case explaining how McQuaide Properties, LLC is responsible for any of the alleged claims.[3] ECF No. 23, ¶ 10.

Venture, in its Response in Opposition to Motion to Dismiss reasserts that McQuaide Properties, LLC operates jointly with W.C. McQuaide, Inc. As support Venture attaches a Lease Agreement executed between Venture and Defendants. The Lease Agreement provides Venture with space on W.C. McQuaide, Inc.'s property to place CNG dispensing equipment. Defendants used that space to fuel vehicles under the terms of the Agreement. ECF No. 26, p. 2; ECF No. 26-1 (Exhibit A "Lease Agreement"). The Lease Agreement, attached to the Response, was made "by and between U.S. Venture, Inc. ... ("Tenant") and the Landlord ... W.C. McQuaide, Inc., ... and McQuaide Properties, L.L.C. ... (collectively or individually, as applicable "Landlord"). ECF No. 26-1, p. 1. Stan R. McQuaide executed the Lease Agreement on behalf of W.C. McQuaide, Inc. as President, and on behalf of McQuaide Properties, LLC as Partner. ECF No. 26-1, p. 3. Venture claims that whether a joint venture exists between Defendants is a question of fact not of

---

[3] *See* fn 1, above. The Court will consider dismissal of defendant McQuaide Properties, LLC, but not dismissal of the Complaint in its entirety. *See also c.f.*, "Defendants now move to dismiss Defendant McQuaide Properties, LLC from this case." ECF No. 23, ¶ 5.

law, and should not be decided until after discovery;[4] to decide a Motion to Dismiss the assertions in the Complaint must be accepted as true.

Defendants' Reply objects to Venture's argument based on the Lease Agreement both procedurally and substantively. Procedurally, Defendants state that the new allegations presented in the Response are outside the four corners of Venture's pleading and cannot be considered by the Court when ruling on this Motion to Dismiss. *See Search v. Uber Techs., Inc.*, 128 F. Supp. 3d. 222, 228 (D.D.C 2015) ("A motion to dismiss under rule 12(b)(6) must rely solely on matters within the complaint ... Where a Court must consider 'matters outside the pleadings' to reach its conclusion, a motion to dismiss 'must be treated as one for summary judgment under Rule 56.'") Substantively, Defendants assert that the Lease Agreement is irrelevant because it is not at issue and it does not support the elements to satisfy a joint venture. Defendants also assert that Venture failed to plead any facts, in its Complaint or elsewhere, that would allow the Court to determine that a joint venture existed. ECF No. 27, p. 3. Defendants state that Venture did not plead the essential "how, when, and where" necessary to establish a plausible claim. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

As an initial matter, the Lease Agreement attached to Venture's Brief in Opposition may not be relied on to determine the legal sufficiency of the Complaint. When ruling on a motion to dismiss, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prods. Liab.*

---

[4] Under Pennsylvania Law, a joint enterprise exists where there is: "1) an agreement, express or implied, among the members of the group; 2) a common purpose to be carried out by the group; 3) a community of pecuniary interest in that purpose among the members; and 4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Michael J. Brandjord & Susan Bandjord, h/w v. Thomas Hopper et al.,* NO. 4570, 1994 WL 1251152, at *45 (Pa. Com Pl. Aug. 10, 1994), aff'd sub nom., *Brandjord v. Hopper,* 688 A.2d 721 (Pa. Super. Ct. 1997) (quoting Restatement (Second) of Torts § 491, cmt. C. Venture did not evaluate these elements in its Complaint.

*Litig.* 822 F.3d 125, 133 n.7 (3d Cir. 2016) (internal citations, quotation marks, and emphasis omitted). When deciding a Motion to Dismiss, the Court may not, however, review documents attached to responsive pleadings to support the allegations in the Complaint. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed.1990); *Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir.1993); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir.1988)).

Venture filed a Complaint with several documents supporting its claims but none of the documents established a claim against McQuaide Properties, LLC, as it was not an explicit party to any of the contracts at issue in the lawsuit. Further, there was nothing contained in the contracts that would lead the Court to conclude there is a business relationship between W.C. McQuaide, Inc., the contracting party, and McQuaide Properties, LLC. Venture alleged "based upon information and belief" McQuaide Properties, LLC is domiciled and/or maintains its principal place of business at the same address as W.C. McQuaide, Inc., ECF No. 1, ¶ 3, and that it operates as a joint venture with W.C. McQuaide, Inc. ECF No. 1, ¶ 6. These allegations are unsupported, speculative, and provide no basis for the Court to determine a plausible claim. *See e.g., Santiago v. Warminster Twp.,* 629 F.3d 121, 128 (3d Cir. 2010) (The District Court dismissed the claims against the defendants because it held that plaintiff had not pled any basis of liability in the defendants' own acts.); *Blue Spike LLC v. Comcast Cable Commc'ns, LLC,* No. CV 19-159-LPS-CJB, 2019 WL 4242930, at *4 (D. Del. Sept. 6, 2019), *report and recommendation adopted,* No. CV 19-159-LPS-CJB, 2019 WL 11027620 (D. Del. Nov. 5, 2019) (The Court found that the Complaint did not establish a plausible claim of infringement when it stated that "the videos on

[Comcast] channels ... are stored on the [Xfinity Box] in encrypted form[,] but failed to allege any 'supporting' fact as to these assertions."); *In re Sobol,* 545 B.R. 477, 492–93 (Bankr. M.D. Pa. 2016) ("Viewing the facts in the light most favorable to [plaintiff] and drawing all reasonable inferences therefrom, I am unable to draw any plausible inference that the debt owed to [plaintiff] was obtained by [defendant] through false pretenses, a false representation, or actual fraud. ... [N]owhere within the Amended Complaint are factual allegations made that the debt owed to [plaintiff] was obtained by false pretenses, false representation, or actual fraud. The only allegations that are made are legal conclusions that recite the statutory language of § 523(a)(2)(A) and state '[u]pon information and belief.'"). *See also c.f. Boyer v. Clearfield Cnty. Indus. Dev. Auth.,* No. CV 3:19-152, 2021 WL 2402005, at *6 (W.D. Pa. June 11, 2021) ("Here, the SAC is replete with allegations that Villella <u>caused</u> the IDA and M&T Bank to not perform their contractual obligations ... by, *inter alia*, structuring the 2004 Lease with C Warehouse as a strawman in an effort to obscure the actual rental revenue being generated under the Domtar Lease, and by refusing to provide information to M&T Bank's appraiser in an effort to suppress the appraised value of the Project Facility. These allegations ..., if believed, are sufficient to state a claim ...").

Given that Venture has not alleged a plausible claim that W.C. McQuaide, Inc. and McQuaide Properties, LLC is a joint venture and that the contracting party to the Agreement and the General Guaranty Agreement is only W.C. McQuaide, Inc., the Court finds that McQuaide Properties, LLC is not a proper defendant in this case and will be dismissed without prejudice.

**IV.   Amendment**

Having found that Venture's Complaint fails to state a claim against McQuaide, Properties, LLC, the Court also made a determination whether further amendment of the claims against McQuaide Properties, LLC would be futile. *See Hockenberry v. SCI Cambridge Springs/Pennsylvania Dep't of Corr.*, 2019 WL

9

2270345, at *3 (W.D. Pa. May 28, 2019) ("The U.S. Court of Appeals for Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile"). Viewing the facts in a light most favorable to Venture the Court will allow opportunity to amend because there is a plausible claim that requires more detail in the facts for the Court to make a substantive determination.

Under the circumstances presented here, Venture may, if it so chooses, file an Amended Complaint to attempt to cure the pleading deficiencies with respect to the claims against McQuaide Properties, LLC. Alternatively, Venture may choose to proceed with the Complaint as it stands but only as to the claims against W.C. McQuaide, Inc.

### V.    Conclusion

It is uncertain whether Defendants seek a full dismissal of the Complaint or a partial dismissal of one defendant in the Complaint. Insofar as the Motion is to dismiss all claims and all parties, Defendants' Motion to Dismiss Venture's Complaint will be GRANTED in part and DENIED in part. The claims against McQuaide Properties, LLC are dismissed without prejudice to replead joint venture allegations with supportive facts. The Motion is denied as to claims against W.C. McQuaide, Inc.; Defendants make no argument about why W.C McQuaide should be dismissed.

An appropriate Order will be entered.

Dated: July 12, 2023

Stephanie L. Haines
United States District Court Judge